DONALD D. WERRIES, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (R. T. Atkinson Electric, Appellee).

Fourth District (Industrial Commission Division)  No. 4—84—0647WC

Opinion filed September 16, 1985.

McNAMARA, J., and BARRY, J., dissenting.

Frank S. Calandrino, of Calandrino, Logan & Berg, P.C., of Springfield, and Roger D. Lapan, of Bloomington, for appellant.

Robert L. Mueller, of Livingstone, Mueller, Gunning, O'Brien & Davlin, P.C., of Springfield, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Donald D. Werries filed an application for adjustment of his claim under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) for injuries allegedly sustained while he was employed by R. T. Atkinson Electric Company. An arbitrator denied Mr. Werries workers' compensation benefits on the grounds that Mr. Werries failed to prove that he had sustained injuries arising out of and in the course of his employment by R. T. Atkinson Electric Company. The Industrial Commission affirmed the arbitrator's decision, and the circuit court of Sangamon County confirmed the decision of the Industrial Commission. Petitioner has perfected this appeal, in which he contends that the Commission erred in not allowing petitioner to

present additional evidence pursuant to Industrial Commission Rule 4—(4)(B)(3).

Petitioner was the sole witness to testify before the arbitrator. He stated that on January 23, 1979, while employed by R. T. Atkinson Electric Company, he slipped and fell off a semitrailer. Mr. Werries estimated that he fell approximately 5 feet and said he felt pain in his left hip, back and shoulder. According to petitioner, he reported the incident immediately to Robert Beasley, the general foreman. Mr. Werries testified that he sought medical help from Dr. Ernest C. Bone the next morning and later was treated by a chiropractor, Dr. Arthur K. Beams, and other physicians. Various medical reports were presented to the arbitrator.

The arbitrator specifically noted that there were "no records in evidence showing any medical or chiropractic treatment to [Mr. Werries] from the alleged date of accident until June 29, 1979," and found that Mr. Werries had failed to prove that an accident occurred which arose out of and in the course of his employment by R. T. Atkinson Electric Company.

In his petition for review of the decision of the arbitrator, Mr. Werries indicated his intention to introduce additional medical and lay evidence before the Industrial Commission.

On September 20, 1983, this cause came on for hearing before a single commissioner, Ted Black, Jr. At that hearing Mr. Werries, over the objection of R. T. Atkinson Electric Company based upon Industrial Commission Rule 4—(4)(B), sought to introduce the testimony of Robert Beasley. The following colloquy occurred:

"THE COMMISSIONER: ***

The gentleman [Mr. Beasley] was available to testify at the time of arbitration, is that correct?

MR. CALANDRINO [Attorney for Mr. Werries]: He would have been but he wasn't subpoenaed at the time because he was foreman for the Respondent.

THE COMMISSIONER: Did the Petitioner testify—did the Petitioner's testimony mention this foreman at the time of arbitration in any kind of way relating to an accident or reporting of an accident?

MR. MUELLER [Attorney for R. T. Atkinson Electric Company]: I don't remember, your Honor. I read it last night. I think it did.

MR. CALANDRINO: I think it was to Mr. Beasley that he reported the accident or that he knew of the accident.

MR. MUELLER: This man was available at the time, your

Honor.

THE COMMISSIONER: And nobody called him?

MR. MUELLER: Nobody called him.

MR. CALANDRINO: But the issue again was created when the Arbitrator makes a new finding that needs substantiation. Now, this issue was not—we had sufficient evidence in the record at that time.

THE COMMISSIONER: Well, you say that Mr. Calandrino. Evidently, the Arbitrator didn't feel that you had a sufficient amount of evidence in there to support your position.

MR. CALANDRINO: I think that's why the issue was created, your Honor, at the time she made the decision so it necessitates additional information.

THE COMMISSIONER: Well—

MR. CALANDRINO: All information in every situation, we can't present every witness of evidence that's available in every case because we'd never finish these cases, but the man—the company had notice and they deny notice, so that's an issue of fraud.

MR. MUELLER: We deny that.

MR. CALANDRINO: Well, that's what this witness would show.

MR. MUELLER: I think the rule remains, your Honor, and decisions remain that this witness should not be allowed to testify.

MR. CALANDRINO: It's never been based on fraud, the rule that he is quoting to you has never been based on fraud. Fraud is an exception to most rules.

THE COMMISSIONER: But no fraud has been proven.

MR. CALANDRINO: I'm ready to prove that.

THE COMMISSIONER: But proof of fraud, we don't have any jurisdiction to hear any evidence pertaining to any fraud because we cannot rule upon that. That's a matter for other jurisdictions other than the Industrial Commission.

MR. CALANDRINO: I think if I could make an offer of proof, it would be very short.

THE COMMISSIONER: Okay, I think you should do that, make an offer of proof and I think you can argue your point, Mr. Calandrino, and if the Commission feels that this Commissioner erred in not allowing this witness to testify based upon the theories that you have presented here, then certainly the Commission in its wisdom can order that this witness be heard

prior to making its decision, so I'm going to deny this testimony from this witness on the basis he could have been called at the time of arbitration. However, I will let you make an offer of proof to protect your record.

\* \* \*

MR. CALANDRINO: All right, I just want to get that information that he was the witness I would have called, and then I'll start from there.

Mr. Beasley would have testified that he was the foreman on the job on January the 23rd, 1979, that he was present there, that he turned around after some commotion and saw Mr. Werries being lifted from the ground by two co-workers; that it was a very slippery icy day and the ground was frozen and that he knew that later that afternoon that Mr. Werries took off to go see the doctor on January the 23rd.

THE COMMISSIONER: Thank you, sir.

Now, the Commission—

MR. CALANDRINO: One other thing, may I add something else, sir? That he made a report that same day of the accident and the report was sent to the employer.

THE WITNESS: Yes, sir.

MR. MUELLER: I object to the—

THE COMMISSIONER: That answer will be stricken.

His offer would include whatever the gentlemen testified to if he had been given an opportunity to testify.

Okay, anything further?

MR. CALANDRINO: Nothing of this witness, your Honor.

(Witness excused.)"

R. T. Atkinson Electric Company again objected on the ground of Industrial Commission Rule 4—(4)(B) to the admission of records of Dr. Arthur K. Beams:

MR. CALANDRINO: \*\*\*

Your Honor, at this time I wish to offer into evidence Petitioner's Exhibit No. 1 on Review.

THE COMMISSIONER: Any objection?

MR. MUELLER: Yes, sir, I object, your Honor, on the same grounds as the objection to the testimony of Mr. Beasley. This information was available to the Petitioner and to his counsel at the time of the hearing on arbitration. There was testimony, I believe, in the record that the man had seen Dr. Arthur K. Beams. Yet, there was no effort to put in any direct testimony from Dr. Beams or any reports. Again, it was available to him

at the time, same rule, and the Fyncham vs. Baldwin case is the basis for the objection. I think he stated under oath, your Honor, that he died May the 6th of 1983. The doctor was available.

MR. CALANDRINO: Again, your Honor, this is an issue created by the Arbitrator and it's stating that the man did not go to a doctor and that's one of her reasons for denying the accident because he immediately should have seen a doctor and he stated that he did see the doctor and this is created by her decision again on arbitration.

THE COMMISSIONER: My ruling on this matter, Mr. Calandrino, is the same as it was in the other incident, that this evidence could have been put before the Arbitrator at the time of the arbitration. However, I will allow you to make an offer of proof on Petitioner's Exhibit 1 which I'm going to reject, and should the Commission feel that I have erred in my ruling on this matter prior to entering a decision in this case, then it can order that this exhibit be accepted and made a part of the record, so if you wish to make an offer of proof as to what the exhibit contains, you may do so.

You may step down.

(Witness excused.)

MR. CALANDRINO: At this time we wish to make an offer of proof. The Arbitrator in her wisdom saw fit to deny an alleged accident because—

MR. MUELLER: Your Honor, I'm going to object to the form of making—

MR. CALANDRINO: I'm showing why I'm making this proof.

MR. MUELLER: The form of making the proof is—

THE COMMISSIONER: Okay, Mr. Calandrino, you can make an offer of proof as to what this exhibit would show if I would permit it to be placed into evidence. On the argument as to whether or not a new issue was created by the decision of the Arbitrator, you can argue that at the time of oral argument, but I don't think that that should be made a part of your offer of proof.

MR. CALANDRINO: My offer of proof is that if Arthur K. Beams, D.C. were called to testify, he would have testified that the Petitioner was treated on January the 23rd, the 24th, the 25th, 26th, 29th, 30th, 31st of 1979 as well as February 2nd of 1979.

THE COMMISSIONER: Okay, then this will be marked as a rejected exhibit and placed in the file but not made a part of the record.

MR. CALANDRINO: Let me show that the doctor died on May the 6th of 1983."

The pertinent procedural rule governing the instant controversy is Industrial Commission Rule 4—(4)(B)(3), which states that "[e]vidence may be adduced on review if the evidence *** was not introduced at the arbitration hearing for good cause." Mr. Werries does not contest the validity of the rule but maintains that the record establishes good cause for not introducing Mr. Beasley's testimony and the medical records of Dr. Beams at the arbitration hearing. Mr. Werries suggests that time constraints and practical considerations regarding the arbitration process is sufficient to establish good cause for not introducing the evidence he later sought to introduce for the first time before the Commission.

Specifically, Mr. Werries suggests that when, as here, an arbitrator's decision is based upon some particular aspect of the evidence presented which was not expected or contemplated by the losing party, then additional evidence must be allowed upon review by the Industrial Commission. We disagree. The approach suggested by Mr. Werries would result in an unworkable procedural rule premised upon a party's subjective *ex post facto* evaluation of an arbitrator's decision. The adoption of the interpretation of the rule urged by Mr. Werries would, in effect, invalidate Industrial Commission Rule 4—(4)(B)(3) requiring a showing of good cause. To allow a party to present additional evidence before the Industrial Commission merely because an arbitrator found insufficient evidence to support a party's position would relieve parties from the responsibility to establish their cases before the arbitrator and could create an inordinate number of requests for additional evidentiary presentations before the Industrial Commission.

In the instant case there was nothing offered by Mr. Werries at the hearing on review which amounts to a showing of good cause for his failure to introduce the testimony of Mr. Beasley and medical records of Dr. Beams before the arbitrator. The evidence was not shown to be unavailable at the time of arbitration nor was any explanation offered for its absence other than counsel's decision not to present this evidence due to time considerations. While we recognize that time is often at a premium when presenting a workers' compensation case before an arbitrator, this fact does not justify a failure to produce sufficient evidence to establish a claim or defense. A party cannot present only a portion of his case before the arbitrator and then subse-

quently supply the deficient portions by presenting additional evidence before the Industrial Commission. Such a procedure would be totally unworkable. It would render the arbitrator's role in workers' compensation proceedings wholly ineffective because all determinations made by the arbitrator regarding the evidence would be subject to being impugned by the presentation of additional evidence before the Industrial Commission by the party against whom the arbitrator decided.

For the reasons stated, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

WEBBER, P.J., and LINDBERG, J., concur.

JUSTICE McNAMARA, dissenting:

I believe that pursuant to Industrial Commission Rule No. 4—(4)(B)(3), the petitioner demonstrated good cause for not presenting to the arbitrator the additional evidence he wished to adduce before the Commission on review. I also believe that the Commission's refusal to allow him to present additional evidence was harsh and unwarranted.

After a hearing at which petitioner was the only witness, the arbitrator made a finding that petitioner failed to prove that he sustained accidental injuries arising out of and in the course of employment. The petitioner sought review and 13 months before the hearing on review served notice on the employer that he wished to present additional lay and medical evidence to the Commissioner.

Regarding the lay evidence, at the hearing before the arbitrator petitioner testified that he was injured at work on January 23, 1979, when he slipped from a semitrailer to the ground. Petitioner also stated that he immediately reported the incident to his general foreman, Robert Beasley, who was present at the time of the occurrence. In his application for adjustment of claim, petitioner had also stated that he gave notice to Beasley. And in each medical record introduced into evidence before the arbitrator, including that of employer's doctor, the medical history reflected that petitioner's injuries arose out of an accident which occurred at work on January 23, 1979.

At the hearing on review, Beasley was sworn in and was prepared to testify as a witness for petitioner. The presiding commissioner, however, sustained the employer's objection to the testimony on the ground that Beasley was available at the time of the arbitration hearing. Plaintiff thereupon made an offer of proof that Beasley would testify that he was present and in charge of the job as general foreman on

January 23, 1979, that he heard some commotion and saw petitioner being helped from the ground, that it was an icy day, that the ground was frozen, and that he permitted petitioner to leave work to see a doctor. Beasley would also testify that on the same day he made a report of the occurrence and sent it to the employer.

I can understand why the petitioner did not attempt to call an agent of the employer as a witness on his behalf at the arbitration hearing. I do not believe that ordinarily claimants should be required or expected to call witnesses who may be adverse to corroborate their claims. It is also understandable that the employer objected to the admission of the additional evidence. Having placed the occurrence and notice of it at issue, it would be extremely embarrassing for the employer to have its own agent testify that he was present when the petitioner was injured, that he permitted petitioner to see a doctor on the same day, and that he immediately furnished a written report of the accident to the employer. I cannot understand, however, why the Commission refused to allow the petitioner to present Beasley's testimony at the hearing on review in order to correct the arbitrator's misapprehension of the evidence and to prevent an injustice.

With regard to the additional medical evidence which petitioner sought to offer on review, the arbitrator in her denial of petitioner's claim stated that all the medical records in evidence indicated that petitioner had not sought any medical treatment after the accident until June 29, 1979.

At the hearing before the arbitrator, petitioner testified that immediately after the injury he was treated by Dr. Bone and by a chiropractor, Dr. Beams. Dr. Beams' records were not placed in evidence before the arbitrator. Dr. Bone's records were received in evidence and apparently indicate that he first treated petitioner on June 29, 1979. I say apparently, because I find the copy of Dr. Bone's medical records contained in the record on appeal to be illegible. I note, however, that employer's counsel questioned petitioner about treatment he received from Dr. Bone in April 1979. When employer's counsel asked petitioner about the date of his first visit to Dr. Bone after the accident, petitioner replied that he had seen Dr. Bone the day after the accident. Counsel for the employer asked several more questions about petitioner's first visit to Dr. Bone, and the petitioner insisted that he had seen Dr. Bone right after the accident. Counsel then asked:

"Q. But just once.

A. No, I seen him several times. I went to Beams and I started going to Dr. Kerch.

Q. I'm talking about Dr. Bone, the only medical doctor you

saw."

At the hearing on review, the presiding commissioner sustained the employer's objection to the introduction of Dr. Beams' medical records on the ground that they were available at the time of the arbitration hearing. The petitioner then made an offer of proof that Dr. Beams' records would show that he treated petitioner on January 23, 24, 25, 26, 29, 30, 31, and February 2, 1979.

I believe that the petitioner showed good cause for not offering Dr. Beams' records into evidence at the arbitration hearing. In view of the exchange between employer's counsel and petitioner at the hearing as set forth above, petitioner and his counsel could well have believed that the employer was not challenging petitioner's testimony about his treatment by the chiropractor after the accident. Employer's counsel restricted his cross-examination to petitioner's visits to Dr. Bone, "the only medical doctor you saw." On the basis of that alone, petitioner should have been allowed to introduce the chiropractor's medical record on review to show that petitioner received treatment immediately after the accident.

Moreover, even if the majority is correct in the assertion that the only explanation by the petitioner for the absence of the proferred evidence at the arbitration hearing was time constraints, I believe that under the circumstances before us the Commission should have accepted the additional evidence. The majority suggests that a ruling by us in favor of petitioner based upon his subjective *ex post facto* evaluation of an arbitrator's decision would result in an unworkable procedural rule. Of course, I do not accept the fact that we are merely considering petitioner's subjective evaluation of the arbitrator's decision. But more importantly, the facts before us, where the employer's own agent is prepared to expose a spurious defense, are exceptional and will not result in an unworkable rule. I think rather that the holding of the Commission in this case will mandate a claimant to present every possible witness and every iota of evidence imaginable to avoid an arbitrator's misperception of the evidence and to prevent a harsh and unjust result. I believe that such a mandate is contrary to the humane spirit of the Act and indeed will result in unworkable procedures.

I would remand the cause to the Industrial Commission with instructions to allow petitioner to present the additional evidence at the hearing on review.

BARRY, J., concurs in dissent.